IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FULTON FINANCIAL ADVISORS, | : | CIVIL ACTION |
| NATIONAL ASSOCIATION, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | NO. 09-4855 |
| | : | |
| NATCITY INVESTMENTS, INC. | : | |
|     Defendant | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                  September 28, 2016

      Defendant PNC Investments LLC, successor by merger to NatCity Investments, Inc. ("NatCity"), has moved to strike the rebuttal report of Plaintiff's damages expert Mark O. Connor. For the following reasons, I grant the Motion only as to the last three paragraphs of the rebuttal report and deny the Motion in all other respects.

**I.    BACKGROUND**

      On March 31, 2014, following a status conference with counsel, I entered a Case Management Order ("CMO") setting discovery deadlines for the case, including the timing and sequence of the parties' submission of expert reports and the taking of expert deposition testimony. (See Docket Entry 46.) Fulton's expert reports were due by July 3, 2014, its experts were to be deposed on or before August 1, 2014, NatCity's expert reports were due by September 5, 2014, and its experts were to be deposed by October 3, 2014. (Id. ¶¶ 2-5.) The CMO was silent on whether additional expert reports, including rebuttal reports, could be filed.

By agreement of the parties, the dates in the CMO were thereafter extended. Fulton served the expert reports of Elin Cherry and Mark Conner on July 17, 2014, and NatCity served the expert reports of John Maine and Mark Gleason on October 17, 2014. NatCity deposed Cherry and Conner on August 14 and 21, 2014, respectively.

After his deposition was completed, but within thirty days of the filing of NatCity's expert reports, Fulton's damages expert Mark Connor filed a rebuttal report on November 17, 2014. Connor asserts that NatCity's damages expert Mark Gleason's "observations and his critique [of Connor's report] are flawed and incorrect in their conclusions." (Def. Ex. D, Rebuttal Expert Report of Mark O. Connor, at unnumbered page 1.) Connor goes on to address twelve "major errors in Mr. Gleason's report" (id.) by individually restating Gleason's criticism in his own section headings, and then offering a substantive response. As part of the twelfth section — addressing Gleason's contention that Connor's damages calculation is faulty because Fulton's filings with the SEC indicated that it intended to hold the auction rate securities at issue in the litigation until maturity — Connor states: "As an alternative to the previously submitted damages estimate [], attached here is a calculation of rescissionary damages as of May 31, 2014." (Id. at unnumbered page 17.[1])

## II.    ANALYSIS

Fed. R. Civ. P. 26(a)(2)(D) governs the timing of expert disclosures. It provides:

> A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must

---

[1] The next two paragraphs go on to note adjustments of this calculation. Together, these three paragraphs are the only part of the rebuttal report related to rescissionary damages.

be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Rule 26 (a)(2)(D). Accordingly, absent a stipulation or court order, a rebuttal report must be filed within thirty days after the other party's expert report has been disclosed.

NatCity first argues that the Connor rebuttal report should be stricken because the March 2014 CMO does not permit the filing of additional reports. While NatCity is correct that the CMO does not indicate a time frame for filing of rebuttal expert reports, that does not mean that rebuttal expert reports are not permitted. Courts have held that where a CMO is silent as to rebuttal expert reports, the terms of Rule 26(a)(2)(D)(ii) permits them if they are timely disclosed. See DOCA Co. v. Westinghouse Elec. Co., LLC, Civ. A. No. 04-1951, 2011 WL 12896754, at *1 (W.D. Pa. Dec. 7, 2011); Teledyne Instruments, Inc. v. Cairns, Civ. A. No. 12-854, 2013 WL 5781274, at * 17 (M.D. Fla. 2013) ("The [scheduling order's] failure to set a deadline for the disclosure of rebuttal expert witness reports does not mean that rebuttal expert witness reports are not permitted. It simply means that rebuttal expert witness reports must be submitted within the period set forth in Rule 26(a)(2)(D)(ii).") (collecting cases and noting this is the majority view). Because Connor's rebuttal report was disclosed by Fulton within the thirty day time period provided by the Rule, it was both permissible and timely and there is no cause to strike it in its entirety.

NatCity next argues that the rebuttal report exceeds the scope of permitted rebuttal testimony in part because it introduces a new theory of rescissionary damages not previously addressed by Connor's first report or by its own expert.  On this point, its arguments have more substance.

Caselaw establishes that a rebuttal report should be stricken if it contains new opinions or information which is contradictory to that set forth in first expert's first report.  See Stein v. Foamex Int'l, Inc., Civ. A. No. 00-2356, 2001 WL 936566 (E.D. Pa. Aug. 15, 2001).  However, a rebuttal report is permissible "if it contains merely 'an elaboration of and [is] consistent with an opinion/issue previously addressed' in the expert report."  Pritchard v. Dow Agro Scis., 263 F.R.D. 277, 285 (W.D. Pa. 2009) (quoting Emcore Corp. v. Optium Corp., Civ. A. No. 06-1202, 2008 WL 3271553, at *4 (W.D. Pa. Aug. 5, 2008) (citing Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006))).

In response to NatCity, Fulton argues that Conner's calculation of rescissionary damages is in direct response to Mr. Gleason's criticisms of Conner's initial calculation of lost profits and is therefore permissible rebuttal.  (Pl. Opp. to Def. Mot. to Strike at 9.)  It adds that any claim of surprise on NatCity's part at the suggestion of a rescissionary damages theory is disingenuous because Fulton is entitled to rescissionary damages by virtue of its claim under Section 1-501 of the Pennsylvania Securities Act.  (See Am. Compl. Count III.)

I reject Fulton's argument.  Connor admits that his three paragraph opinion on rescissionary damages is offered as "[a]n alternative to the previously submitted damages

estimate." Indisputably, there is no suggestion in the original report that Fulton would rely on this theory. Whether or not Fulton is **entitled** to rescissionary damages is a separate question from whether the issue was previously addressed in its first expert disclosure. Rather than being offered as a "direct response to Gleason's criticisms of Conner's initial calculation of lost profits," as Fulton suggests, the opinion on rescissionary damages is offered as a substitute for the initial calculation. Because it is not an "elaboration" of the first report, but offers a new and contradictory damages calculation after Connor had a full opportunity at his deposition to explain and defend his first one, this portion of the rebuttal report is improper.

Finally, NatCity argues that the rebuttal report should be stricken in its entirety because Connor, in the guise of addressing Gleason's criticisms, "attempts to clean-up the false claim in his Original Report that he based certain of his conclusions on communications with Fulton personnel, when he actually relied on communications with Fulton's counsel." (Def. Mem. at 14.) Specifically, while in the original report Conner stated that he confirmed certain information through "interviews with Fulton personnel" (Def. Ex. A at ¶ 73 n. 60), he testified at his deposition that he never spoke with anyone at Fulton and his request for information was directed to Fulton's counsel.[2] (Def. Ex. B

---

[2] The information concerned Connor's opinions on the opportunity cost to Fulton of investing in auction ate securities rather than alternative investments. He stated that "Fulton made actual investments in these [alternative] securities during the time period at issue here and would have been likely to invest in these securities to a greater degree had the [sic, should read "it"] had use of the capital used to repurchase their [sic] ARS. . . . I confirmed that this would have been Fulton's intention through interviews with Fulton personnel." (Def. Ex. A at ¶ 73 n. 60.) When asked about this assertion, he stated at his deposition "You know, I'm sorry, I — I did get that through counsel. I asked them to ask folks at the bank for that information. That's

(Dep. of Mark O. Connor) at 164:2-172:10.)  NatCity argues that he thus had no independent factual basis for a key assumption underlying his original damages calculation and should not be allowed to now claim that he has had those communications with Fulton personnel.

Accepting that Connor's deposition testimony — that he received his information from Fulton's counsel rather that Fulton personnel — contradicts a claim in his original report, it is not a valid basis to strike a rebuttal report that is timely disclosed.  Notably, Connor does not make an assertion in the rebuttal that he "received" information from Fulton; he somewhat carefully states that "Fulton represented" or "Fulton furnished" certain information.  (<u>See</u> Def. Ex. D at unnumbered page 1.)  Whether or not this is an attempt to "clean-up the false claim," NatCity makes no cogent argument why this makes the rebuttal report improper.  While the contradiction contained in the original report may well raise a <u>Daubert</u> issue, that is not the basis of the Motion NatCity has filed — which only seeks to strike the rebuttal report — and the issue has not been framed in <u>Daubert</u> terms.[3]  Thus, consideration of this issue is premature.

Accordingly, the Motion is granted in part as to the last three paragraphs only since they are beyond the scope of proper rebuttal.

An appropriate Order will follows.

---

not a proper — proper characterization.  I got that through counsel, as a result of my request to ask them for that."  (Def. Ex.  B at 164:14-19.)

[3] The pending cross motions for summary judgment also do not concern the expert reports on damages.  Thus, the issue will become ripe only if the case proceeds to a jury trial and Fulton seeks to use Connor's report.